**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 24-cv-01030-NYW-TPO

AIDA PTSELNIKOV,

Plaintiff,

v.

ARTISAN AND TRUCKERS CASUALTY COMPANY,

Defendant.

---

**OMNIBUS MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on the following:

(1) Defendant's Motion for Summary Judgment [Doc. 87, filed November 3, 2025]; and

(2) Plaintiff's Motion for Partial Summary Judgment [Doc. 90, filed November 7, 2025]

(3) Plaintiff's Motion to Strike Biomechanical Engineering Opinions and Untimely Disclosed Report of Defendant's Expert John R. Schwappach, M.D. ("Motion to Strike Schwappach") [Doc. 81, filed October 3, 2025]; and

(4) Plaintiff's Motion to Strike Accident Reconstruction Opinions and Untimely Disclosed Affirmative Expert Opinions of Defendant's Expert David Werber, Esq. ("Motion to Strike Werber," and collectively with the Motion to Strike Schwappach, "Motions to

Strike") [Doc. 82, filed October 3, 2025].[1]

These Motions are fully briefed, [Doc. 83; Doc. 84; Doc. 93; Doc. 94; Doc. 96; Doc. 101], and this Court finds that oral argument would not materially assist in their resolution. For the following reasons, this Court respectfully **GRANTS** Defendant's Motion for Summary Judgment; **DENIES** Plaintiff's Motion for Partial Summary Judgment; **DENIES as moot** Plaintiff's Motion to Strike Schwappach; and **DENIES as moot** Plaintiff's Motion to Strike Werber.

## BACKGROUND

The background of this case has been discussed in detail in this Court's prior order, [Doc. 77], and therefore, the Court limits its discussion herein. On or about November 14, 2021, Plaintiff Aida Ptselnikov ("Plaintiff" or "Ms. Ptselnikov") was involved in a two-car collision. [Doc. 18 at 5]. The second car involved in the collision did not stop. [Doc. 29-1 at 35:47–49]. Ms. Ptselnikov alleges that she sustained injuries from the collision, and sought uninsured motorist ("UM") benefits under her insurance policy with Defendant Artisan and Truckers Casualty Company ("Defendant" or "Artisan"). [Doc. 1-1 at ¶¶ 10, 15]. Artisan has failed to pay any UM benefits under the policy. [Doc. 1-1 at ¶ 27].

Plaintiff originally filed the case in the Colorado District Court of Denver County, and brings three claims: (1) breach of contract ("Count I"); (2) common law bad faith breach of contract ("Count II"); and (3) unreasonable delay and denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116 ("Count III"). [Doc. 1-1 at ¶¶ 22–43]. Defendant

---

[1] When referring to documents filed in this action, this court uses the convention [Doc. __], referring to the docket and page number assigned by the court's Electronic Court Files ("ECF") System. In citing to deposition transcripts, this court uses the convention of citing to the document number assigned by the ECF system, but page and line number from the original deposition transcript for consistency purposes.

removed the case to this Court on April 17, 2024 pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332. [Doc. 1]. Defendant filed an Answer to the Complaint on April 17, 2024, denying each claim and asserting the following affirmative defenses, among others:

> (1) Some or all of the Plaintiff's claims are barred or limited by the Plaintiff's breach of the conditions of the Policy as set forth in the section entitled **DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS**, including, but not limited to, Paragraphs 1-3 and 7 ("Affirmative Defense Four");
>
> (2) Some or all of the Plaintiff's claims are barred or limited by Paragraph 5. Legal Action Against Us condition under the heading **GENERAL PROVISIONS** of the Policy ("Affirmative Defense Five");
>
> (3) The Plaintiff's claims are barred pursuant to C.R.S. §10-3-1118(1)(a)-(e) based on the failure to cooperate with written requests for relevant information and documentation concerning the Plaintiff's medical history, which information and documentation is not available to the Defendant without the assistance of the Plaintiff, and which is necessary to complete a reasonable evaluation of the claimed injuries and damages. The Plaintiff and her counsel were given more than 60 days to respond to these reasonable written requests. When the Plaintiff and her counsel did not respond, Defendant notified the Plaintiff and her counsel of the failure to cooperate in writing and allowed the Plaintiff 60 days to cure, which the Plaintiff and her counsel disregarded ("Affirmative Defense Six"); and
>
> (4) To the extent th[ere] was a breach of contract, which Artisan and Truckers Casualty Company denies, any alleged breach was induced by the conduct of the Plaintiff or Plaintiff's counsel as her representative ("Affirmative Defense Nine").

[Doc. 2 at 6–7 ¶¶ 4–6, 9].

The Court entered a Scheduling Order on July 17, 2024 that included, inter alia, four undisputed facts and pretrial deadlines. [Doc. 18]. The Parties proceeded through discovery, and these Motions followed. In Plaintiff's Motions to Strike, Ms. Ptselnikov seeks to strike Dr. Schwappach and Mr. Werber as untimely and pursuant to Rules 702 and 403 of the Federal Rules of Evidence. [Doc. 81; Doc. 82]. In its Motion for Summary

Judgment, Artisan seeks judgment in its favor on all claims, arguing that (1) there is no genuine issue of material fact that Ms. Ptselnikov was more than 50% negligent for the collision, thereby disqualifying her from UM benefits; (2) her claims for statutory and common law bad faith fail because Artisan's denial of Ms. Ptselnikov's claims were fairly debatable; and (3) all of Ms. Ptselnikov's claims are barred because she failed to cooperate. [Doc. 87]. In Opposition to Defendant's Motion for Summary Judgment, Plaintiff contends that Artisan may not assert a defense of failure to cooperate by incorporating her arguments from her affirmative Motion for Partial Summary Judgment.[2] [Doc. 93 at 21]. For her part, Ms. Ptselnikov seeks summary judgment in her favor as to Affirmative Defenses Four, Five, Six, and Nine, characterized as "varied forms that Plaintiff violated her duty to cooperate under the Policy."[3] [Doc. 90 at 2]. The Court first considers the two potentially dispositive issues, i.e., whether Plaintiff is more than 50% liable for the underlying collision and whether Plaintiff's claims are barred due to her failure to cooperate and/or failure to satisfy conditions precedent. Having determined that none of Plaintiff's causes of action can survive summary judgment, the Court need not

[2] Plaintiff's attempt to incorporate by reference her arguments from her Motion for Partial Summary Judgment is procedurally improper. Ms. Ptselnikov cites no authority, and this Court independently knows of none, that allows a party to incorporate by reference arguments from one motion to another. Neither the Federal Rules nor the Local Rules permit a party to incorporate other filings or arguments into a motion. Courts within this District routinely reject this practice as an impermissible circumvention of applicable page limitations. *See, e.g.*, *Bagoue v. Developmental Pathways, Inc.*, No. 16-cv-01804-PAB-MJW, 2017 WL 4236316, at *2 n.2 (D. Colo. Sept. 25, 2017); *Maccagnan v. Cherry Creek Sch. Dist. No. 5*, No. 22-cv-00503-CMA-KLM, 2023 WL 6127904, at *2 (D. Colo. Sept. 18, 2023); *Lee v. Denver Pub. Sch.*, No. 20-cv-01989-WJM-MEH, 2022 WL 5241884, at *7 n.5 (D. Colo. Oct. 6, 2022).

[3] Within the body of her Motion for Partial Summary Judgment, Ms. Ptselnikov appears to expand her request for relief to Defendant's eighth affirmative defense. [Doc. 90 at 18–19].

reach Ms. Ptselnikov's Motions to Strike.

## UNDISPUTED FACTS

The following undisputed facts drawn from the summary judgment record and the entire docket.

1. On or about November 14, 2021, Plaintiff was involved in a two-car collision. [Doc. 18 at 5].

2. At the time, Ms. Ptselnikov was driving her vehicle on East Lowry Boulevard, near the roundabout intersection with North Yosemite Street in Denver, Colorado. [*Id.*].

3. A camera affixed within Plaintiff's vehicle captured video of the collision, which the Parties do not dispute is authentic. [Doc. 87 at ¶¶ 3–4; Doc. 93 at 2 ¶¶ 3–4; Doc. 29-1; Doc. 87-1 at 64:4–25].

4. Prior to reaching the roundabout, Ms. Ptselnikov passed a road sign advising that the speed limit in the roundabout was 15 miles per hour. [Doc. 87 at ¶ 6 (citing Doc. 29-1 at 35:34); Doc. 93 at 2 ¶ 6].

5. Ms. Ptselnikov was traveling at approximately 30 miles per hour.[4] [Doc. 87-3 at 3].

---

[4] Ms. Ptselnikov disputes Artisan's asserted fact that she was traveling 30 miles per hour. *See* [Doc. 93 at 4 ¶ 16]. Contrary to Artisan's assertion, the deposition testimony cited does not establish that fact. *Compare* [Doc. 87 at ¶ 16] *with* [Doc. 87-1 at 107:18–108:16]. Indeed, while Ms. Ptselnikov agreed that the police officer was described Ms. Ptselnikov as moving "at an estimated speed of 30 miles per hour," defense counsel posed the question, but never received an affirmative response to his inquiry of "[s]o you were moving at 30 miles per hour as you were going through the circle, correct?" [Doc. 87-1 at 108:2–16]. But Plaintiff's demand to Artisan states "Ms. Ptselnikov . . . was traveling westbound in lane #1 of E. Lowry Blvd at N Yosemite St at an estimated speed 30mp." [Doc. 87-3].

6. Ms. Ptselnikov did not see the other car before the collision. [Doc. 87 at ¶ 17; Doc. 93 at 4 ¶ 17; Doc. 87-1 at 95:18–20].

7. The second car involved in the collision ("Second Vehicle") did not stop. [Doc. 29-1 at 35:47–49]. In addition, no one has identified the driver of the Second Vehicle ("Second Driver").

8. The audio associated with the video does not record any sound associated with a turn signal. *See* [Doc. 29-1].

9. Artisan and Truckers Casualty Company Policy No. 03254049-0 ("the Policy") was in effect on November 14, 2021, and Ms. Ptselnikov was an insured under the Policy, subject to its express provisions, exclusions, limitations, and conditions. [Doc. 18 at 5; Doc. 87-2 at 2–3].

10. The Policy includes Uninsured Motorist coverage with a combined single limit of $1,000,000.00, subject to its express provisions, exclusions, limitations, and conditions. [Doc. 18 at 5; Doc. 87-2 at 3, 8]

11. The Policy includes an "Uninsured/Underinsured Motorist Coverage Endorsement" that provides, in pertinent part:

> Subject to the Limits of Liability, if you pay the premium for Uninsured/Underinsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured is legally entitled to recover from the owner or operator of an uninsured auto or an underinsured auto because of bodily injury:
> 1. sustained by an insured;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance, or use of an uninsured auto or an underinsured auto.

[Doc. 87-2 at 8 (emphasis omitted)].

12. The Policy also contains a provision entitled "Duties In the Event of An

Accident or Loss" that expressly requires that a person seeking coverage must: "cooperate with [Artisan] in any matter concerning a claim or lawsuit;" "provide any written proof of loss [Artisan] may reasonably require;" "allow [Artisan] to take signed and recorded statements, including sworn statements and examinations under oath, which we may conduct outside the presence of you, a relative, or any person claiming coverage, and answer all reasonable questions we may ask as often as we may reasonably require;" and "authorize [Artisan] to obtain medical and other records." [Doc. 87-2 at 7 (emphasis omitted)].

13. Paragraph 5. Legal Action Against Us condition under the heading **GENERAL PROVISIONS** of the Policy provides "[Artisan] may not be sued unless there is full compliance with all the terms of the policy." [Doc. 90-5 at 3].

14. Ms. Ptselnikov reported the collision to Defendant shortly after it occurred. [Doc. 93-7 at 105:5–7]. By letter dated November 17, 2021, counsel for Ms. Ptselnikov informed Defendant that his office had been retained to represent Ms. Ptselnikov regarding injuries sustained in the November 2021 collision. [Doc. 90-6].

15. By letter dated February 1, 2023, Ms. Ptselnikov, through counsel, made a demand to Artisan for payment of UM benefits under the Policy. [Doc. 87 at ¶ 21; Doc. 93 at 4 ¶ 21; Doc. 87-3]. At that time, Ms. Ptselnikov claimed $241,952.26 of past medical expenses, but made a demand for Policy limits. [Doc. 87-3 at 11].

16. By letter dated March 10, 2023,[5] Artisan informed Plaintiff through her counsel that it was "not able to tender our policy limits or extend any offers at this time,"

[5] The Parties refer to this communication as the March 2, 2023 letter. *See e.g.*, [Doc. 90 at 5 ¶¶ 16–18; Doc. 101 at 4 ¶ 16]. But the letter is unequivocally dated March 10, 2023 [Doc. 87-5; Doc. 87 at ¶ 27], and thus, this Court refers to it by its actual date.

because "[a]review of the footage obtained from the dash camera on [Ms. Ptselnikov's] vehicle supports that she had been the proximate cause of the loss" and the determination that Plaintiff was 75% at fault for failure to maintain control of her lane, failure to maintain proper lookout, and failure to take evasive action. [Doc. 87-5 at 1]. However, Artisan further stated, "[i]f you have any evidence to support liability against the other driver, please submit it to my attention. We will revisit our position if warranted." [*Id.*].

17. Artisan did not identify any other basis of denial in the March 10 letter, nor did it specifically request any information other than "evidence to support liability against the other driver." [Doc. 87-5].

18. Plaintiff did not submit any additional information to Artisan regarding the other driver's liability.

19. Ms. Ptselnikov was involved in a prior motor vehicle accident on April 16, 2019 ("2019 Accident"), that involved injuries to the same parts of her body as claimed in this case, including injuries to her head, neck, back, and right knee, and post-traumatic stress disorder. [Doc. 87 at ¶¶ 32, 38; Doc. 93 at 5 ¶ 32, 6 ¶ 38]. Plaintiff's counsel represented her in matters related to the 2019 Accident. [Doc. 87-1 at 126:12–15].

20. No later than May 15, 2023, Defendant had some records of the 2019 Accident. [Doc. 87-7 at 1]. But Defendant stated "[m]y letter will include requests for additional information [Artisan] hopes to acquire to assist with <u>its evaluation of the liability and damages issues we discussed</u>," and requested from Plaintiff, through their respective counsel, additional information regarding the 2019 Accident. [*Id.* (emphasis added)]. Specifically, defense counsel stated "[i]f your office has photographs of the vehicles involved in the prior accident and any dash cam, police body camera, or police reports

from the prior accident, [Artisan] would appreciate your forwarding those to me for [Artisan's] consideration. [*Id.*]. Defense counsel explained that "[Artisan] also is attempting to clarify the manner in which this relatively minor impact caused the reported injuries and the manner in which the claimed injuries relate to the injuries sustained in her prior accident of April 16, 2019." [*Id.*].

21. On May 17, 2023, Defendant reiterated that request from Plaintiff, again through their respective counsel, for documents related to the 2019 Accident, including "photographs of the involved vehicles, any dash cam video, police body camera video, or police reports," "depositions or statement transcripts relative to the prior accident," and "all records related to injuries or complaints involving the prior accident and any prior complaints involving similar areas of the body," to assist in Artisan's "claim investigation and evaluation." [Doc. 87-6 at 1–2]. Defendant specifically stated that "[Artisan] continues to evaluate the claim pursuant to a reservation of rights. . . . Your client's cooperation with the claim investigation and evaluation is a condition precedent to benefits." [*Id.* at 3].

22. By letter dated November 28, 2023, Defendant explained that "Artisan and Truckers continues to reserve its rights on the question of medical causation and issues of apportionment between the subject accident and the injuries sustained in Ms. Ptselnikov's prior accident of April 16, 2019" and reiterated its request for "copies of any statements, depositions, medical records [including patient questionnaires, pain diagrams, and imaging studies], photographs of the involved vehicles, dash camera or police body camera footage, and the police accident report," as well as a request that Ms. Ptselnikov execute an insurance records release authorization to be sent to the liability

insurance carrier for the 2019 Accident, "[t]o assist the claim investigation and evaluation process with regard to the question of medical causation and apportionment between the two accidents." [Doc. 87-8 at 2]. Defense counsel enclosed a proposed insurance records release authorization. [*Id.*].

23. By letter dated February 6, 2024, Defendant followed up on its written requests for information as reflected in its November 28, 2023 letter and enclosed another copy of a proposed insurance records release authorization. [Doc. 87-9 at 1].

24. By e-mail dated March 21, 2024, defense counsel contacted Plaintiff's counsel and noted that Defendant had not received a substantive response to either the November 28, 2023 or February 6, 2024 letter. [Doc. 87-10 at 1]. Artisan again stated "[y]our client's cooperation is a condition of the insurance policy. Artisan and Truckers cannot complete its investigation and evaluation without your client's cooperation." [*Id.*].

25. Plaintiff did not provide the proposed insurance records release authorization or any additional records requested to Artisan.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is

such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

At summary judgment, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In order for there to be a genuine issue for trial, there must be more than "the mere existence of a scintilla of evidence in support of the plaintiff's position." *Id.* at 252.

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See id.* at 255; *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## ANALYSIS

The Parties agree that Colorado law governs their disputes, *see* [Doc. 1-1; Doc. 2; Doc. 83; Doc. 90], and this Court follows the Parties' mutual understanding, *see Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008).

### I. There is a Genuine Issue of Material Fact as to Whether Ms. Ptselnikov Is More Than 50% Negligent.

Ms. Ptselnikov's Policy includes an "Uninsured/Underinsured Motorist Coverage

Endorsement" that provides, in pertinent part:

> Subject to the Limits of Liability, if you pay the premium for Uninsured/Underinsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages, which an insured is legally entitled to recover from the owner or operator of an uninsured auto or an underinsured auto because of bodily injury:
> 1. sustained by an insured;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance, or use of an uninsured auto or an underinsured auto.

[Doc. 87-2 at 8 (emphasis added)]. Pursuant to her UM benefits, Ms. Ptselnikov has "the right to recover compensation for loss caused by an uninsured motorist in the same manner that recovery would be permitted for a loss due to an insured motorist." *See State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177, 184 (Colo. 2004); Colo. Rev. Stat. § 10-4-609. "The act requires that the UM/UIM insured must be able to establish the legal liability of the uninsured motorist and the extent of damages." Colorado Uninsured/Underinsured Motorist Summary, 4 Auto. Liab. Ins. 4th § 70:1. Under Colorado law, "the four elements of a standard negligence claim are: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) injury to the plaintiff, and (4) a proximate cause relationship between the breach and the injury." *Bullock v. Wayne*, 623 F. Supp. 2d 1247, 1252 (D. Colo. 2009), *as amended* (Apr. 17, 2009) (citing *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo.1992)). But comparative negligence may "preclude [a plaintiff's] recovery from an otherwise negligent defendant if the plaintiff's negligence was equal to or greater than the defendant's negligence." *Shaw v. Shelter Mut. Ins. Co.*, No. 17-cv-00723-KLM, 2019 WL 1573303, at *4 (D. Colo. Apr. 10, 2019) (quoting *Walker v. Am. Standard Ins. Co. of Wisconsin*, No. 11-cv-00927-LTB, 2011 WL 3876901, at *3 (D. Colo. Sept. 2, 2011)); Colo. Rev. Stat. § 13-21-111(1). Thus, Ms. Ptselnikov must prove

that the other driver was more than 50% at fault for the collision in order to trigger UM benefits. *See Progressive Direct Ins. Co. v. Ortiz*, 590 P.3d 285, 289 (Colo. 2026).

Defendant moves for summary judgment on liability, based on its assessment that Ms. Ptselnikov was more than 50% at fault for the collision because she crossed into the next lane without using her signal, while speeding at 30 miles per hour in a 15 mile-per-hour zone. [Doc. 87 at 9–11]. To support these facts, Artisan relies on the video from Plaintiff's dashcam, [Doc. 29-1], and Plaintiff's admissions at deposition and in her demand to the insurance company, [Doc. 87-3; Doc. 87 at ¶ 24]. Artisan then argues that Ms. Ptselnikov's conduct amounts to negligence per se thus precluding UM coverage. [Doc. 87 at 10–11]. Meanwhile, Ms. Ptselnikov testified that she never left the left lane. [Doc. 93-4 at 93:22–24; Doc. 93 at ¶ 12; Doc. 93 at 12]. She points to Claim Notes that indicate that "INSURED DRIVER WAS STRUCK ON THE PASSENGER SIDE BY A HIT AND RUN VEHICLE THAT FLED THE SCENE IMMEDIATELY AFTER THE IMPACT." [Doc. 93-5 at 1 (emphasis in original); Doc. 93 at ¶ 12].

Artisan is correct that Colorado courts have held that "violation of a traffic ordinance constitutes negligence per se." *Bullock*, 623 F. Supp. 2d at 1252 (quotation omitted). But simply because Ms. Ptselnikov may have been negligent per se, it does not establish that she was more than 50% at fault for the collision <u>as a matter of law</u>. The doctrine of negligence per se pertains to a party's duty and whether that duty was breached. *See Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 n.3 (Colo. 2008). It does not resolve the allocation of fault between Ms. Ptselnikov and the Second Driver. *See McCormick v. United States*, 539 F. Supp. 1179, 1182 (D. Colo. 1982) (holding that even after finding negligence as a matter of law arising from a violation of a

statute or ordinance regulating the use of roadways, the court had to apportion the parties' relative fault). The Court is mindful that because Ms. Ptselnikov bears the ultimate burden of proof for liability, Artisan need not disprove Ms. Ptselnikov's claim but only point to a lack of evidence as to an essential element. *Adler*, 144 F.3d at 671.

Here, Ms. Ptselnikov argues that the same video can be interpreted to show a hit-and-run driver at fault for the collision. The Second Driver's actions and vehicle location immediately prior to the accident cannot be seen. [Doc. 29-1]. In addition, the video does show the Second Vehicle leaving the scene after the collision and not stopping. [*Id.* at 35:44–49]. The Second Driver's actions could implicate the violation of other traffic ordinances, such as the requirement to stop in the case of a motor vehicle accident. *See* Colo. Rev. Stat. 42-4-1602(1). While Ms. Ptselnikov's testimony that she never left the lefthand lane appears to be contradicted by the video, [*id.* at 35:39–48], this Court must view the facts in the light most favorable to Plaintiff and cannot weigh evidence at this juncture. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] [s]he is ruling on a motion for summary judgment[.]" *Anderson*, 477 U.S. at 255.

"Only in the clearest of cases where the facts are undisputed and reasonable minds can draw but one inference should relative degrees of fault be determined as a matter of law." *Lyons v. Nasby*, 770 P.2d 1250, 1260 (Colo. 1989), *superseded by statute on other grounds as recognized in Build It and They Will Drink, Inc. v. Strauch*, 253 P.3d 302, 305–06 (Colo. 2011). This is not such a case. Accordingly, this Court respectfully **DENIES** Defendant's Motion for Summary Judgment as to this basis.

The Court next considers Defendant's second potentially dispositive argument,

i.e., Ms. Ptselnikov is not owed any UM benefits based on her failure to provide requested information or authorization for records required under the Policy.

## II. Affirmative Defense Four[6]

In Affirmative Defense Four, Artisan asserts that "[s]ome or all of the Plaintiff's claims are barred or limited by the Plaintiff's breach of the conditions of the Policy as set forth in the section entitled **DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS**, including, but not limited to, Paragraphs 1-3 and 7." [Doc. 2 at 6 ¶ 4]. Under that section, the Policy enumerates a list of things that "[a] person seeking coverage must" do. [Doc. 87-2 at 7]. Specifically, Paragraphs 1–3 and 7 refer to the requirements for the insured to: "cooperate with [Artisan] in any matter concerning a claim or lawsuit;" "provide any written proof of loss [Artisan] may reasonably require;" "allow [Artisan] to take signed and recorded statements, including sworn statements and examinations under oath, which we may conduct outside the presence of you, a relative, or any person claiming coverage, and answer all reasonable questions we may ask as often as we may reasonably require;" and "authorize [Artisan] to obtain medical and other records." [Doc. 87-2 at 7 (emphasis omitted)]. In Affirmative Defense Five, Artisan asserted that "[s]ome or all of the Plaintiff's claims are barred or limited by Paragraph 5. Legal Action Against Us condition under the heading **GENERAL PROVISIONS** of the Policy," which provides "[Artisan] may not be sued unless there is full compliance with all the terms of this policy." [Doc. 90-5 at 2].

Under Colorado common law of insurance, "policyholders have a duty to cooperate with their insurer to support the investigation, adjustment of claims, and any litigation

[6] It is not entirely clear to this Court why both Parties seem to direct their arguments to the issue of reasonableness. [Doc. 90 at 11; Doc. 94]. Failure to satisfy a condition precedent is also defense to Ms. Ptselnikov's breach of contract claim. *See United Servs. Auto. Ass'n v. Wenzell*, 588 P.3d 711, 717 (Colo. 2026), *reh'g denied* (May 11, 2026).

undertaken by the insurer to compensate the policyholder." *See United Servs. Auto. Ass'n v. Wenzell*, 588 P.3d 711, 717 (Colo. 2026), *reh'g denied* (May 11, 2026). As recognized by Plaintiff, "an insured may forfeit his right to recover if he fails to cooperate in violation of an insurance policy provision." *Hall v. Allstate Fire & Cas. Ins. Co.*, 20 F.4th 1319, 1323 (10th Cir. 2021) (citing *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015)); [Doc. 90 at 10].

To address concerns regarding insurers' invocation of failure-to-cooperate defense based on a nebulous duty to cooperate, the Colorado legislature passed H.B. 20-1290, which became Colo. Rev. Stat. § 10-3-1118(1). Section 1118 imposes mandatory requirements upon insurers in first-party cases, i.e., cases involving an insurance company and its own insured, before they may advance a failure-to-cooperate defense in a court of law or arbitration:

> (a) The insurer has submitted a written request to the insured or the insured's representative for the information the insurer seeks via:
>
> (I) Electronic means if the insured or the insured's representative has consented to receive electronic documents from the insurer; or
> (II) Certified mail;
>
> (b) The information is not available to the insurer without the assistance of the insured;
>
> (c) The written request provides the insured sixty days to respond;
>
> (d) The written request is for information a reasonable person would determine the insurer needs to adjust the claim filed by the insured or to prevent fraud; and
>
> (e) The insurer gives the insured an opportunity to cure, which must:
>
> (I) Include the furnishing of written notice to the insured of the alleged failure to cooperate, describing with particularity the alleged failure, within sixty days after the alleged failure; and

> (II) Allow the insured sixty days after receipt of the written notice to cure the alleged failure to cooperate.

Colo. Rev. Stat. § 10-3-1118(1).[7]

But § 10-3-1118(1) does not apply to Defendant's Affirmative Defenses Four, Five, Six, and Nine equally. The Colorado Supreme Court recently held that there is a distinction between a policyholder's common law duty to cooperate generally (as reflected in a policy's general cooperation clause) and a policyholder's duty to satisfy the conditions precedent specifically enumerated in an insurance policy. *Wenzell*, 588 P.3d at 717. The *Wenzell* court described the distinction as follows:

> In discussing this common-law defense, we have distinguished between general "duties of cooperation" as opposed to the conditions precedent for performance under the contract, which are an additional list of duties designed to assure that the insurer had all the information about the nature of the UIM claim.

*Id.* (cleaned up). And the Colorado Supreme Court explicitly held that while the mandatory procedures set forth in § 10-3-1118(1) apply to the common law failure-to-cooperate defense, it does not apply to condition-precedent defenses. *Id.* at 719.

---

[7] The Colorado Supreme Court recently summarizes these elements as follows:

> Under the statute, to assert a failure-to-cooperate defense, an insurer must give the policyholder written notice of his or her failure to cooperate within sixty days of the alleged failure, and the notice must provide the policyholder with sixty days to cure. § 10-3-1118(1)(e)(I)–(II). Specifically, an insurer must inform the policyholder that it is seeking information that is unavailable without the help of the insured and may only seek information that a reasonable person would determine is needed to adjust the claim or to prevent fraud. § 10-3-1118(1)(b), (d).

*Wenzell,* 588 P.3d at 718.

### A. Section 10-3-1118(1) Does Not Apply to Affirmative Defense Four

In her Motion for Partial Summary Judgment, Ms. Ptselnikov argues, inter alia, that Artisan may not assert Affirmative Defenses Four and Five because Defendant did not comply with § 10-3-1118(1). [Doc. 90 at 10–19]. But in applying *Wenzell*, this Court respectfully concludes that at least Paragraphs 2, 3, and 7 under the Duties in the Event of an Accident or Loss, invoked through Affirmative Defense Four, are properly understood to plead a failure-to-comply-with-conditions-precedent and thus, are not subject to § 10-3-1118.[8] The condition-precedent clauses at issue in *Wenzell* provided: "[a] *person* making claim under ... Uninsured Motor Vehicle Coverage ... must ... provide written authorization for *us* to obtain: (a) medical bills; (b) medical records; ... and (d) any other information *we* deem necessary to substantiate the claim," and "[a] person or entity seeking any coverage or payment of any benefits ... must ... [a]uthorize *us* to obtain medical reports and other pertinent records." *Wenzell*, 588 F.3d at 715 n.1. Similarly, Ms. Ptselnikov's Policy requires "[a] person seeking coverage must: … authorize **us** to obtain medical and other records," [Doc. 87-2 at 7], and is properly understood to be a failure-to-comply-with-conditions-precedent defense. *See Knight v. State Farm Auto. Ins. Co.*, No. 23-cv-00007-JLK-CYC, 2026 WL 2540081, at *2 (D. Colo. Aug. 27, 2026). Indeed, Plaintiff concedes as much in her Motion for Partial Summary Judgment. [Doc. 90 at 18].

[8] It does not necessarily follow, however, that Paragraph 1 of the DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS, which requires a person seeking coverage to cooperate with Artisan in any matter concerning a claim or lawsuit as invoked by Affirmative Defense Four, or that Paragraph 5. Legal Action Against Us condition under the heading GENERAL PROVISIONS of the Policy, which prohibits Artisan from being "sued unless there is full compliance with all the terms of this policy," are properly considered conditions-precedent exempt from § 10-3-1118, rather than simply a reflection of Colorado common law.

Accordingly, to the extent that Plaintiff seeks partial summary judgment as to Affirmative Defense Four arising from the Policy's requirement that an insured provides authorization for medical and other records, on the basis that Artisan failed to comply with Colo. Rev. Stat. § 10-13-1118(1), that request is respectfully **DENIED**.

**B. Artisan May Avail Itself of Affirmative Defense Four**

In its own Motion for Summary Judgment, Defendant argues that Plaintiff's failure to provide records associated with the 2019 Accident and insurance authorization after repeated requests by Artisan precludes recovery on all of Plaintiff's claims. [Doc. 87 at 14–17]. This Court focuses on the duty to provide authorization to obtain medical and other records as stated in the Policy because it is most clearly a condition precedent as defined by *Wenzell.*

Plaintiff argues that "Defendant has maintained its denial of coverage and position that Plaintiff is not entitled to benefits solely on the issue of liability," and therefore, Artisan may not avail itself of Affirmative Defense Four. [*Id.* at 15 (emphasis removed)]. Defendant contends that it did not deny Ms. Ptselnikov's claim in its March 10 letter because "a claim denial occurs 'when an insurer denies a claim outright,'" relying upon *Canady v. Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-00344-RBJ, 2020 WL 376494, at *3–4 (D. Colo. Jan. 23, 2020). [Doc. 94 at 9–12; Doc. 87-5]. While it finds Defendant's reliance on *Canady* inapposite,[9] this Court concludes that Defendant is not barred from

[9] The *Canady* court was distinguishing between a claim for undue denial versus unreasonable delay of insurance benefits arising under Colorado statutory law within the context of a motion for judgment on the pleadings brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure—observing that an insured could not bring simultaneous claims for both for the same conduct. *Canady*, 2020 WL 376494, at *3. In that context, the court stated:

asserting the failure-to-comply-with-conditions-precedent affirmative defense in this action for the following reasons.

First, this Court is not persuaded that the fact that Artisan never changed its position regarding Ms. Ptselnikov's comparative fault renders Artisan's failure-to-satisfy-conditions precedent affirmative defense inapplicable in these circumstances. To succeed on a breach of contract claim, a plaintiff bears the burden of proving (1) a contract exists; (2) the plaintiff performed; (3) the defendant failed to perform; and (4) the plaintiff incurred damages. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). A condition precedent is "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." *Soicher*, 351 P.3d at 564 (quoting *Black's Law Dictionary* (10th ed. 2014) at 355). "Where an insurance contract contains a condition precedent, performance of that condition is a prerequisite to recovery on the policy." *6 W. Apartments, LLC v. Ohio Cas. Ins. Co.,* No. 20-cv-02243-RBJ, 2021 WL 4949154, at *8 (citing *Hurt v. N.Y. Life Ins. Co.*, 51 F.2d 936, 938 (10th Cir. 1931)); *Culichia v. Safeco Ins. Co. of Am.*, No. 18-cv-00977-DDD-KMT, 2019 WL 4464551, at *4 (D. Colo. Sept. 18, 2019) ("Under Colorado law, performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is

---

> Unreasonable denial occurs "when an insurer denies a claim outright," whereas unreasonable delay occurs "when the insurer pays on a claim but disputes the value of that claim, thereby delaying payment of the claim's full value." A plaintiff cannot bring simultaneous claims for unreasonable denial and unreasonable delay for the same conduct.

*Id*. (citations omitted). Here, there is no dispute that Artisan has not paid anything on Ms. Ptselnikov's claim, so her claim is properly framed as an undue denial under the Colorado bad faith statute. But at no time did *Canady* address what a court or factfinder should weigh in order to determine that the insurance company had "denied a claim outright."

excused." (quotation omitted)). This is consistent with the *Wenzell* court's observation that to prevail on a failure-to-comply-with-conditions-precedent defense, an insurer need not show prejudice. *Wenzell*, 588 P.3d at 717. Thus, the fact that Artisan did not ultimately need the insurance authorization from Ms. Ptselnikov to render its liability decision is of no consequence—Ms. Ptselnikov was required to comply with the Policy's condition precedent in order to even trigger UM coverage.

Second, this Court respectfully finds that there is no genuine issue of material fact that the March 10, 2023 letter did not constitute a final denial of Ms. Ptselnikov's claim that would excuse Ms. Ptselnikov from the Policy's conditions-precedent. It is undisputed that Defendant repeatedly, through its attorneys, expressly stated that it had not concluded its claim evaluation and was continuing its investigation into both liability and damages. On May 15, 2023, defense counsel contacted Plaintiff's counsel, indicating "[m]y letter will include requests for additional information [Artisan] hopes to acquire to assist with its evaluation of the liability and damage issues we discussed," and requested from Plaintiff, through their respective counsel, additional information regarding the 2019 Accident. [87-7 at 1 (emphasis added)]. Two days later, Defendant specifically stated "[Artisan] continues to evaluate the claim pursuant to a reservation of rights. . . . Your client's cooperation with the claim investigation and evaluation is a condition precedent to benefits." [Doc. 87-6 at 3 (emphasis added)]. By letter dated November 28, 2023, Defendant again explained that "Artisan and Truckers continues to reserve its rights on the question of medical causation and issues of apportionment between the subject accident and the injuries sustained in Ms. Ptselnikov's prior accident of April 16, 2019." [Doc. 87-8 at 2 (emphasis added)]. In rebutting summary judgment, Plaintiff may not

simply rely on denials or her characterization of the facts; rather, she must point to evidence that creates a genuine issue of material fact. *See GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings. Nor can the nonmovant defeat summary judgment by relying on ignorance of the facts, on speculation, or on suspicion." (cleaned up)). Here, Plaintiff adduces no evidence that Defendant's representations to Ms. Ptselnikov that it continued to investigate the claim were false or its request for insurance authorization was disingenuous in light of the plain language of Defendant's correspondence.

Finally, Ms. Ptselnikov cites no authority—nor could this Court find any—that the retention of counsel somehow terminated Artisan's investigation as a matter of law and rendered the March 10, 2023 letter a final denial. Indeed, courts within the Tenth Circuit have observed that the roles of claims handler and attorney are not mutually exclusive. *See W. Nat'l Bank of Denver v. Emps. Ins. Of Wausau*, 109 F.R.D. 55, 57 (D. Colo. 1985) (noting that a person who is an attorney but acting in the capacity of an investigator and adjuster for the insurance company prepares an investigative file in the ordinary course of the insurer's business). *Accord Olsen v. Owners Ins. Co.*, No. 18-cv-01665-RM-NYW, 2019 WL 2502201, at *3 (D. Colo. June 17, 2019) (observing that "if a lawyer is acting in an investigative capacity, and not as a legal counselor, with reference to whether an insurance claim should be paid, then neither the [attorney-client] privilege . . . nor the work product privilege protects communications from a lawyer to an insurance carrier." (quoting *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130 (Colo. App. 1998))).

For these reasons, this Court respectfully **DENIES** Plaintiff's Motion for Partial

Summary Judgment as to Affirmative Defense Four, insofar as it is based on the Policy's condition-precedent that an insured must provide Artisan authorization to obtain medical and other records.

### C. Summary Judgment is Appropriate In Favor of Artisan on Plaintiff's Breach of Contract and Statutory Bad Faith Claim Based on Plaintiff's Failure to Comply With A Condition Precedent

The denial of Plaintiff's Motion for Partial Summary Judgment as to Affirmative Defense Four does not automatically entitle Artisan to summary judgment. *See Banner Bank*, 916 F.3d at 1326 ("Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party."); *see also Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

But here, it is undisputed that Ms. Ptselnikov did not adduce any evidence to create a genuine issue of material fact that she executed the proposed insurance release which falls within the plain language of the Policy's requirements for Ms. Ptselnikov to authorize to obtain medical and "other records," i.e., insurance records of her 2019 Accident. And it is well-settled that an insured's failure to comply with a policy's conditions precedent is fatal to her breach of contract claim. *See Valentine v. James River Ins. Co.*, No. 22-1323, 2023 WL 8614113, at *2–3 (10th Cir. Dec. 13, 2023); *Soicher*, 351 P.3d at 564; *Jensen v. Am. Fam. Mut. Ins. Co.*, 683 P.2d 1212, 1214 (Colo. App. 1984). In turn, it is well-established that a claim for unreasonable denial of benefits requires a showing that benefits were actually owed to the insured. *See TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018) (to prevail on a statutory bad faith claim, the

plaintiff must provide that "(1) benefits were owed under the policy; and (2) defendant unreasonably delayed or denied payment of plaintiff's claim").

Accordingly, summary judgment in favor of Artisan is appropriate on Counts I and III, Plaintiff's breach of contract and statutory bad faith claims. In so ruling, the Court does not reach the Parties' arguments regarding other affirmative defenses arising from an alleged failure to cooperate.

## III. Common Law Bad Faith

A common law bad faith claim may be viable notwithstanding a determination that there is no coverage if the claim "is based not on the denial of coverage, but on the defendant's alleged bad faith in the investigation, defense, handling, or settling of a claim." *Palm v. Esurance Prop. & Cas. Ins. Co.*, No. 20-cv-02838-NYW-STV, 2023 WL 2503511, at *5 (D. Colo. Mar. 14, 2023). "To prevail on such a claim, the insured 'must establish that the insurer acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim." *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985)). An insurer's conduct is evaluated based on the information before the insurer at the time of the decision. *Id.*

Defendant contends that summary judgment in its favor on Plaintiff's common law bad faith claim is appropriate because: (1) it was reasonable for it to challenge claims that are "fairly debatable," (2) an insurer has an affirmative duty to challenge "fairly debatable" claims, and (3) "[r]easonable persons cannot disagree that the Plaintiff was at least 50% at fault for the accident." [Doc. 87 at 2, 13]. Because the Court has already determined that there is a genuine issue of material fact as to whether Ms. Ptselnikov was

more than 50% negligent, *see* supra at 11–14, this Court focuses on Defendant's "fairly debatable" arguments.

Colorado courts have held that it is reasonable for an insurer to challenge claims that are "fairly debatable." *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012), *as modified on denial of reh'g* (Mar. 15, 2012); *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 496 (Colo. App. 2011). While "fair debatability" alone does not defeat a bad faith claim as a matter of law, *see Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217–18 (Colo. App. 2010), it does weigh against it. *Id.* In part, that is because the "fairly debatable" defense goes as much to the knowledge or recklessness prong of common law bad faith as it does to unreasonable conduct. *See Vacarro*, 275 P.3d at 760. Indeed, the Tenth Circuit and Colorado courts have recognized that denials of coverage based on reasonable, albeit mistaken, beliefs do not constitute common law bad faith. *See Anderson v. State Farm Mut. Auto. Ins. Co.*, 416 F.3d 1143, 1148 (10th Cir. 2005) (citing *Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567, 572 (Colo. App. 2003) ("If an insurer does not know that its denial of a claim is unreasonable and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable.")).

The video depicts Ms. Ptselsnikov's vehicle proceeding in the left-hand lane as she approaches the roundabout:




[Doc. 29-1 at 35:42 (depicting the road markings for roundabout)]. It then appears that, right before the roundabout, Ms. Ptselnikov's vehicle straddles the lane line in the roundabout separating the entry to the roundabout:




[Doc. 29-1 at 35:39–46]. Subsequently, the car (presumably the Second Vehicle involved in the collision) leaving the roundabout appears to be in the right-most lane:







[*Id.* at 35:49–50]. The audio associated with the video captures music playing and Ms. Ptselnikov's verbal reaction after the collision, but does not appear to record any sounds attributable to a turn signal. *See generally* [29-1]. As previously noted, the video does not show the actions taken by the Second Driver prior to the collision. *See id.* And it is

undisputed that Ms. Ptselnikov did not see the other car before the collision, [Doc. 87 at ¶ 17; Doc. 93 at 4 ¶ 17; Doc. 87-1 at 95:18–20], so it follows that she did (and could not) provide any information to Artisan about how the Second Driver was operating the Second Vehicle, or where the Second Vehicle was on the road.

Plaintiff repeatedly insists that "there are a multitude of material facts in the record that would lead a reasonable jury to conclude that Plaintiff's claim was not fairly debatable," "[t]here are a multitude of material facts in the record that would lead a reasonable jury to conclude that Defendant did take a groundless position in denying Plaintiff's claim that was not supported by credible evidence," and "[i]t was a groundless position for Defendant to deny Plaintiff's claim on the basis of one adjuster's subjective opinion of a video." [Doc. 93 at 15–18]. At summary judgment, however, Ms. Ptselnikov cannot simply rely on her contrary arguments, ignorance of the facts, on speculation, or on suspicion. *GeoMetWatch Corp.*, 38 F.4th at 1200; *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003). She fails to point to specific facts, much less "a multitude of material facts" in the record sufficient to create a genuine issue of material fact that Artisan's interpretation of the video was unreasonable—even if not dispositive regarding liability—or that Artisan acted with the required knowing disregard or recklessness that its assessment of liability was not "fairly debatable." As a result, this Court respectfully concludes that summary judgment on Count II, Plaintiff's common law bad faith claim, is warranted.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment [Doc. 87] is **GRANTED**;

(2) Plaintiff's Motion for Partial Summary Judgment [Doc. 90] is **DENIED**;

(3) Plaintiff's Motion to Strike Biomechanical Engineering Opinions and Untimely Disclosed Report of Defendant's Expert John R. Schwappach, M.D. [Doc. 81] is **DENIED as moot**;

(4) Plaintiff's Motion to Strike Accident Reconstruction Opinions and Untimely Disclosed Affirmative Expert Opinions of Defendant's Expert David Werber, Esq. [Doc. 82] is **DENIED as moot**;

(5) The Clerk of Court is **DIRECTED** to **ENTER** final judgment in favor of Defendant Artisan & Truckers Casualty Company and against Plaintiff Aida Ptselnikov;

(6) Defendant Artisan & Truckers Casualty Company is entitled to its costs pursuant to Federal Rule of Civil Procedure 54(d) and D.C.COLO.LCivR 54.1; and

(7) The Clerk of Court is **DIRECTED** to **TERMINATE** this case.

DATED: September 23, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge